## W. F. MACKAY *v.* UNITED STATES

No. 5934.—Invoices dated Winnipeg, Manitoba, January 27 and February 12, 1940.
 Entered at Noyes, Minn., January 29 and February 14, 1940.
 Entry Nos. 1399–A and 1571–A.

(Decided September 22, 1943)

*Curtis E. Loehle* for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph A. Howard, Jr.,* special attorney), for the defendant.

WALKER, Judge: These are appeals to reappraisement from values found by the acting United States appraiser at the port of Noyes, Minn., on certain frozen calf livers imported from Canada and entered at that port on January 29, 1940, and February 14, 1940. The merchandise was appraised on the basis of foreign value, which is defined in section 402 (c) of the Tariff Act of 1930, as amended.

There is no dispute as to the correct basis of value, the only question being as to the correct amount which represented such value at the time of exportation.

On behalf of the plaintiff Carl Loest testified that he had been manager since 1935 of the provision department of Swift Canadian Co., the exporter, at Winnipeg, Canada, and had been with the company for 14 years. He was familiar with the transactions here involved and stated that the imported merchandise consisted of "Select calf livers in 12-pound pails, frozen." Under direct examination he testified that during the months of January and February 1940, only five sales of frozen calf livers were made for home consumption, and he produced copies of the invoices covering those sales, which were received in evidence as plaintiff's collective exhibit 1.

Also introduced by the plaintiff were two lists, each headed "Wholesale Price List," one shown to be "Effective January 22, 1940," and the other "Effective Feb. 12." On these *fresh* calf livers are quoted at prices which are pointed out by plaintiff's counsel to be equal, when converted, to the appraised values in each instance. It is plaintiff's contention that the market value of fresh calf livers should not be used in determining the dutiable value of frozen calf livers.

On behalf of the defendant there was offered and received in evidence as defendant's exhibit 3 a report made by a United States customs agent in connection with the two importations at bar. The information contained therein is stated to have been obtained from Mr. Loest, a Mr. Robertson, who is identified as "City Sales Manager" of the exporter, and a Mr. Walker, who is identified as "Sales Manager covering country sales." While in many ways the report corroborates the testimony of Mr. Loest, nevertheless on several points they seemingly contradict each other.

Thus, although Mr. Loest testified that during the months of January and February 1940, only the five sales represented by the invoices in collective exhibit 1 were made for home consumption of frozen calf livers, the report (p. 5) states:

The managers of the sales departments informed me that ninety-nine percent of their sales are of the frozen product, particularly on account of the perishable nature of the product. However, the wholesale price lists cover either the fresh or frozen product.

With reference to the price being the same for the fresh or frozen product, as shown in the report, Mr. Loest indicated that such was not the case. His testimony on that point is as follows:

X Q. Do you remember telling him [the customs agent] that the Wholesale Price List which is issued by the country sales department covers either the fresh or the frozen product?—A. I don't remember that. I don't think it would be necessary to tell him. I don't know whether they would sell any frozen livers. As I just pointed out, they are pretty nearly all fresh livers. There are only five

sales we made in those two months. We would be very foolish if someone came in——but competition doesn't permit it——and they were kind enough to give us a price for frozen livers equal to that for the fresh. We would be rather foolish to say, "No, we can't take that."

Concerning the various price lists which were referred to by the witness and in the report, it appears that one, known as the "Central Canadian Branch House Price List" was issued by the provision department and circulated only among branch houses, not being shown to customers nor to the salesmen. The city sales department also issued its own price list for use of the salesmen in the city of Winnipeg, and the prices thereon were quoted only to buyers in that city. The country sales department issued at least two price lists, one, known as the A list being circulated among mining and lumbering camps and mail-order customers, and the other, known as the "Wholesale Price List," being circulated "to chain stores, people that buy large enough to justify our expense in handling." Plaintiff's collective exhibit 2 represents actual "Wholesale Price Lists" and the witness said that he believed that they were the "most generally distributed" of all the price lists.

It appears that the prices quoted on the A list were somewhat lower than those quoted on the "Wholesale Price List," but the witness stated that the prices on neither list were strictly adhered to; that as to the A list "sometimes we got more and sometimes less"; that as to the "Wholesale Price List" the same was true, and that the salesmen had "trading privileges," within reason, to sell above or below the price list.

The foregoing, in my view, negatives the possibility of the price lists having any evidentiary value in determining the foreign value of the items in question at the time of exportation thereof. Not only does it appear that there was no price shown on any of the lists which might be considered a price "at which such or similar merchandise [was] freely offered for sale to all purchasers," as section 402 (c), *supra*, requires, but, further, it appears that the prices shown on the lists were not always adhered to.

This brings me to a consideration of the five sales represented by the invoices contained in collective exhibit 1. While, as hereinbefore pointed out, the statement of the witness Loest that the foregoing represented the only sales of frozen calf livers during the period in question is seemingly contradicted by the statement in the customs agent's report that 99 per centum of the sales made were of the frozen product, I do not regard it as necessary to resolve that conflict for the reason that in my view on the record presented the mere showing that such sales were made was not sufficient *ipso facto* to establish that they represented the freely offered price to all purchasers.

Both Mr. Loest's testimony and the report of the customs agent indicate that it was the practice to charge varying prices to different

customers for the same items, depending upon the category of the purchaser. There is nothing to show the category of the purchasers of the merchandise represented by the invoices in collective exhibit 1 save that two invoices were made out to a railway, two to a gold mining outfit, and one to a "G. W. Fivhong" of "Madsen, Ont." Whether these customers paid a freely offered price or a more favorable one does not appear from the record, and in view of the fact that it is established that in many, if not all, cases the category of the purchaser determined the price paid by him I cannot accept collective exhibit 1 as establishing prices upon which a determination of foreign value might be made.

Under the circumstances, I find that the plaintiff has failed to meet the burden cast upon him of proving that the appraised value was otherwise than correct (section 501, Tariff Act of 1930), and I therefore find that foreign value, as defined in section 402 (c), *supra*, was the correct basis of value for the merchandise in issue, and that such value, in each case, was the appraised value.

Judgment will issue accordingly.